United States Court of Appeals,

Fifth Circuit.

No. 95-40310.

Robert Lee WESTFALL, Plaintiff-Appellant,

v.

Wayne MILLER, Chief, National Firearms Act Branch, Department of the Treasury, and the United States of America, Defendants-Appellees.

March 18, 1996.

Appeal from the United States District Court for the Eastern District of Texas.

Before KING, STEWART and PARKER, Circuit Judges.

STEWART, Circuit Judge:

Robert Lee Westfall appeals the district court's judgment, which held that Westfall lacked standing to challenge the law enforcement certification requirement, that even if Westfall had standing mandamus was an improper remedy and the Administrative Procedure Act did not provide jurisdiction over the action, and further that Westfall failed to state a claim upon which relief could be granted because the law enforcement requirement does not violate the Tenth, Fifth, or Fourteenth Amendments of the Constitution. Finding that Westfall lacks standing, we affirm.

FACTS

On March 16, 1993, Robert Lee Westfall contracted to purchase an AWC Systems Technology machinegun. Federal regulations require a transferee of a machinegun to submit to the National Firearms Act Branch of the Bureau of Alcohol, Tobacco and Firearms ("ATF") an ATF Form 4, which is an application for Tax Paid Transfer and

1

Registration of Firearm. ATF Form 4 requires the transferee to obtain a certification from a local law enforcement official that, inter alia, the official has no knowledge that the transferee will use the firearm for an unlawful purpose.

Westfall, who resides in the City of Plano, Collin County, Texas, requested the required certification from the officials located within five miles of his home: the City of Plano Chief of Police, the Sheriff of Collin County, and the Collin County District Attorney. Each of these officials declined or refused to complete the certification. Nevertheless, on July 7, 1993, Westfall submitted his Form 4 and other prescribed documents to the ATF. He attached a letter challenging the legal basis for the law enforcement certification. Additionally, Westfall attached an affidavit explaining that he had unsuccessfully attempted to obtain certification from the chief of police, the sheriff, and the district attorney in his area.

On August 27, 1993, Wayne Miller, the chief of the National Firearms Branch of the ATF, sent Westfall a letter refusing to process Westfall's application because it was incomplete without the required law enforcement certification. Miller also informed Westfall that the transferee has the burden of obtaining the law enforcement certification and advised Westfall of other officials who could give the certification. The proposed certifying officials included the head of the state police and certain judges.

Westfall filed suit on October 20, 1993 against Miller in his official capacity and the United States, seeking a declaration that

the law enforcement provision of 27 C.F.R. § 179.85 violated the Tenth and Fourteenth Amendments of the Constitution, as well as a writ of mandamus directing the ATF to approve his application. Westfall amended his complaint to add that § 179.85 also violated his Fifth Amendment right to due process. The ATF moved to dismiss Westfall's complaints, and soon thereafter Westfall sought summary judgment.

On March 28, 1995, the district court granted the ATF's motion to dismiss with prejudice. First, the district court held that Westfall did not have standing to challenge the certification requirement because he had not exhausted his certification options prior to filing suit. Second, the district court held that even if Westfall had standing, mandamus was not the appropriate remedy. Third, the district court concluded that the Administrative Procedure Act did not provide jurisdiction. Finally, the district court held that the complaint failed to state a claim upon which relief could be granted because the law enforcement certification requirement did not violate the Constitution. The Tenth Amendment was not violated because state officials do not have a duty to make the certification. Westfall could not establish a Fifth Amendment due process violation because he did not have a property right in possession of a machinegun. Further, Fourteenth Amendment due process was not implicated because there was no state action. Westfall timely appealed.

DISCUSSION

A. *STANDARD OF REVIEW.*

3

We review de novo the granting of a motion to dismiss, accepting as true all well pleaded assertions in the light most favorable to the plaintiff. *See American Waste & Pollution Control Co. v. Browning-Ferris,* 949 F.2d 1384, 1386 (5th Cir.1991). Dismissal is appropriate only if the district court could not afford relief to the plaintiff under any set of facts consistent with the allegations in the complaint. *Id.* Accordingly, we will uphold the dismissal only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In viewing the facts in favor of the plaintiff, we need not strain to find inferences favorable to the plaintiff. Therefore, we will view the facts in Westfall's favor, and Westfall is entitled to all inferences that surface from a fair and reasonable reading of the pleadings.

## B. *STANDING.*

Before we can address the merits of Westfall's arguments we must determine whether Westfall is the appropriate party to raise these complaints. Just because Westfall does not like the firearms regulation does not give him standing to complain about its legality. The courts are designed to address only grievances of people who have suffered real injuries causally linked to the defendant's alleged unlawful conduct and likely to be redressed by the requested relief. *See* U.S. Const. art. III; *see also Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, ----, 113 S.Ct.

4

2297, 2301-02, 124 L.Ed.2d 586, 595-96 (1993). The Supreme Court explained the three elements of standing as follows:

> It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, ...; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court, ...; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of the favorable ruling in not too speculative.

*Id.* (citations and quotations omitted). Accordingly, we must first examine the substance of Westfall's injuries before diving into the constitutional complaints alleged.

The district court found that Westfall lacked standing because he failed to exhaust his certification options before filing suit. Therefore, the court concluded that Westfall failed to demonstrate a causal link between the certification requirement and his injury.

Westfall argues that he fully complied with all constitutional and lawful requirements of 27 C.F.R. § 179.85. He claims that the ATF's contention that he must seek certification from the head of the Texas State Police (a position which he contends does not exist) or other officials is an attempt to unreasonably expand the list of qualified individuals who may certify his application. Finally, Westfall asserts that the Eleventh Circuit in *Steele v. National Firearms Act Branch,* 755 F.2d 1410 (11th Cir.1985), impliedly held that a firearm purchaser would have standing to

5

challenge the regulations by holding that a seller lacked standing to challenge them.

On the other hand, the ATF argues that Westfall has failed to establish the necessary causal link between his injury and the regulation because he has not shown that he is not the cause in fact of his injury. The ATF further alleges that Westfall has not pursued certification from all specified persons, such as the head of the Texas State Police (which the ATF contends is the Texas Department of Public Safety). Finally, the ATF maintains that Westfall misinterprets the *Steele* decision.

We agree with the district court and with the ATF that Westfall lacks standing to bring the instant action. Westfall correctly directs our attention to *Steele,* which persuasively addresses the issue in a different context; however, we find that Westfall grossly misinterprets *Steele.* In *Steele,* the Eleventh Circuit analyzed whether Steele, a seller of firearms, had standing to challenge the law enforcement certification requirement. 755 F.2d at 1413-15. Steele submitted requests to State Attorney Janet Reno, United States Attorney Atlee Wampler, and United States Marshall Carlos Cruz, who all refused to sign the certificate. *Id.* at 1413. The National Firearms Act Branch (NFAB) informed Steele, that although he was an attorney, the NFAB probably would not accept the certificate with his signature in the certification section. The NFAB also notified Steele that there were other local officials, besides Reno, whose signature the NFAB would accept. Steele filed suit without seeking attestations from any other local

officials. The Eleventh Circuit found that Steele could not satisfy the causation element of the standing inquiry. *Id.* at 1414. The court explained as follows:

> The allegedly illegal conduct challenged by the appellant is the NFAB's refusal to approve firearms transfers without a properly supported Form 4539. The line of causation from that conduct to plaintiff's injury is not established from the allegations of the complaint or other materials in the record. The challenged regulation indicates that local law enforcement officials are eligible to sign the form, and the exhibits attached to the complaint indicate that appellant was directed to such officials. *Appellant's inability to sell his inventory would be fairly traceable to the purportedly unlawful conduct only if all of the eligible signers listed in the regulation would not sign the form.... Without such an allegation [that local officials other than Reno refused to sign the form] ..., this court cannot be sure whether the injury was caused by the defendant's actions or by appellant's failure to pursue all possible avenues listed in the regulation to obtain the required signatures.*

*Id.* The Eleventh Circuit clarified that the causation element is satisfied only if the petitioner exhausts the remedies available in the regulation. Steele had not requested signatures from all acceptable officials listed in the statute. Accordingly, the court could not determine whether the injury Steele alleged was self-inflicted by his own inaction.

We are persuaded by the reasoning of the Eleventh Circuit and adapt its analysis to fit the specific issue presented here. Westfall requested signatures of some local officials who refused to make the required certification. Although the ATF informed Westfall of other acceptable local officials, Westfall made no effort to obtain certifications from these officials. We can only conclude that his inaction has caused any injury he has suffered. We fully understand that, as the regulation is written, Westfall

7

may possibly have to face more rejection or even go outside of the five mile radius of his home in order to exhaust the regulation's list of certifying officials. We also acknowledge that this process may prove to be cumbersome, frustrating, and inconvenient for Westfall. Nonetheless, we find the completion of the statutory procedure necessary to establish Westfall's injury. Moreover, we cannot ignore the fact that Westfall will not have an injury of which to complain if the chief of the Texas Department of Public Safety or a judge in his area provides the requested certification.

Under the facts of this case we also must reject Westfall's arguments that the ATF is attempting to unreasonably expand the list of qualified individuals who may certify his application. The ATF's suggestion is consistent with the directives of the statute. Section 179.85 specifically lists the head of the state police, whose functional equivalent in this case is the head of the Texas Department of Public Safety,[1] as a certification option. Enforcing

---

[1]The head of the Department of Public Safety, the highest law enforcement official in the state of Texas, is the official whom Texas law enforcement bodies recognize as the head of the state police. The ATF, citing Texas Gov't Code § 411.002, indicates in its brief that the Texas Department of Public Safety is the State Police of Texas "since it is an agency of the State which enforces the laws protecting the public safety and providing for the prevention and detention of crime." The letter from the City of Plano police department, which declined to provide the certification, specifically advised Westfall to seek certification from the head of the Department of Public Safety. The ATF's post-argument submission to this court demonstrates that the Director of the Department of Public Safety has completed the law enforcement certification for some of the recently approved Form 4 transfer application. Therefore, it is more than mere supposition that Westfall could get the necessary certification from the head of the Texas State Police by soliciting the Director of the Department of Public Safety.

the statute as written certainly cannot be interpreted as an unreasonable expansion. Further, requiring Westfall to seek certification from local judges is consistent with case law interpreting § 179.85. *Compare Steele,* 755 F.2d at 1415 n. 3 (where the appellate court impliedly noted that it was reasonable to require the transferee to seek certification from the other local officials in his area before the transferee was eligible to challenge the legality of the law enforcement requirement).[2] We find, therefore, that the ATF was completely within its authority to require Westfall to exhaust these certification options.

Westfall has failed to establish that he has suffered an injury in fact which is fairly traceable to actions taken by the ATF. Thus, the district court correctly dismissed Westfall's complaint.

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's

---

[2]The ATF's list of qualified officials from whom Westfall could seek certification appears even more reasonable in light of the number of transfer applications approved using the Form 4 process with signatures from the very officials from whom Westfall refused to seek certification. The ATF approved a total of 1,275 Form 4 transfer applications for Texas transferees between March 16, 1993 (the date Westfall contracted to purchase the machinegun) and November 25, 1995. Of the 1,275 applications, 829 transfers involved Texas transferees receiving machineguns. Certifying officials included chiefs of police, sheriffs, the director of the Texas Department of Public Safety, local district attorneys, Texas state court judges, county attorneys, Texas marshals, Texas constables, and United States provost marshals. The ATF has not asked Westfall to seek certification from any official that has not already certified a Form 4 application. Accordingly, the ATF has not expanded its list of qualifying officials, and its instruction to Westfall to exhaust the already established list was not unreasonable.

judgment dismissing Westfall's complaint with prejudice.